IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| DANIEL D. DILLARD, § | |
| TDCJ No. 1400285, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:19-cv-00081-M-BP |
| § | |
| LORIE DAVIS, *et al.*, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are *pro se* Plaintiff Daniel Dillard's Second Motion for Default Judgment (ECF No. 99); Dillard's Motion for Temporary Restraining Order and Preliminary Injunction with Brief in Support (ECF No. 109); Defendants Lumpkin, Smith, Holmes, Reitsma, Washington, and Lozada's Motion to Dismiss Pursuant to FRCP 12(c) (ECF No. 112) and Dillard's response (ECF No. 153); Defendants McLemore and Smalley's Motion to Dismiss (ECF No. 137) and Dillard's response (ECF No. 150); and Tracy Warren's Motion to Intervene (ECF No. 143) and Motion to Supplement Motion to Intervene (ECF No. 155). After considering the motions, pleadings, and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **DENY** these motions.

I.   **BACKGROUND**

Daniel Dillard is an inmate previously confined in the George Beto Unit of the Texas Department of Criminal Justice ("TDCJ") in Tennessee Colony, Texas. *See* ECF No. 86 at 3. Dillard alleges being falsely accused of assaulting a TDCJ staff member, for which he was transferred to a different TDCJ facility and unconstitutionally subjected to a form of solitary

confinement called "Restrictive Housing." *Id.* at 1. Dillard sues several TDCJ officials under 42 U.S.C. § 1983, including Director Bobby Lumpkin, Senior Warden Jimmy Smith, and Assistant Wardens Elbert Holmes and Andrea Lozada in their official and individual capacities, and Majors Bryan Reitsma and Timothy Washington and Correctional Officers Lavonda McLemore and Bridgette Smalley in their individual capacities only. *Id.* at 3-5; *see* ECF No. 149.

At issue are Dillard's motions for a default judgment (ECF No. 99) and for temporary injunctive relief (ECF No. 109), and the TDCJ officials' Rule 12 motions. Defendants Lumpkin, Smith, Holmes, Reitsma, Washington, and Lozada move to dismiss under Federal Rule of Civil Procedure 12(c). ECF No. 112. Defendants McLemore and Smalley move to dismiss under Rules 12(b)(1) and 12(b)(6). ECF No. 137.

## II. LEGAL STANDARDS

### A. Default Judgment

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment against defendants that have "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Entering a default judgment lies within the district court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). A default judgment is a "drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

### B. Temporary Restraining Order and Preliminary Injunction

To obtain a temporary restraining order or preliminary injunction, the movant must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the preliminary injunction [or temporary restraining order] will not disserve the public interest." *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015). Granting a temporary restraining order or

preliminary injunction is an "extraordinary remedy," and the party seeking the remedy must clearly carry the burden of persuasion on each element to prevail. *See Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

### C. Federal Rule of Civil Procedure 12

Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings are "closed" once the plaintiff files a complaint, and the defendants file their answer. *See Nortel Networks Ltd. v. Kyocera Wireless Corp.*, No. 3:02-cv-0032-D, 2002 WL 31114077, at *1 n.1 (N.D. Tex. Sept. 20, 2002).

The Court reviews a Rule 12(c) motion as it would a Rule 12(b)(6) motion. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Accepting "all well-pleaded facts as true" and "viewing them in the light most favorable to the plaintiff," the Court considers "whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(c) motions, like Rule 12(b)(6) motions, are "disfavored and rarely granted." *See Boyd v. Dall. Indep. Sch. Dist.*, No. 3:08-cv-0426-M-BF, 2009 WL 159243, at *1 (N.D. Tex. Oct. 28, 2008), *rec. adopted*, 2009 WL 159243 (N.D. Tex. Jan. 21, 2009). They serve "to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). It remains "this court's policy to give the greatest latitude to *pro se* prisoner complaints in § 1983 actions." *Jacquez v. Procunier*, 801

3

F.2d 789, 793 (5th Cir. 1986). Accordingly, the Court liberally construes *pro se* complaints. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**III. ANALYSIS**

    **A.    The Court should deny Dillard's Motion for Default Judgment.**

The record does not warrant granting the drastic, disfavored remedy of a default judgment. *See Sun Bank of Ocala*, 874 F.2d at 276. Defendants have filed responsive pleadings throughout this litigation. *See, e.g.*, ECF Nos. 33, 47, 57, 80, 83, 108, 112, 124, 137. Dillard claims Defendants and their attorney "have been significantly unreasonable and vexatious in multiplying this litigation, and ha[ve] wil[l]fully disobeyed several of the Court's lawful orders." ECF No. 99 at 1. There is no evidence that Defendants willfully ignored Court Orders. Dillard apparently contends Defendants are delaying the proceedings, yet Dillard, like Defendants, has requested and received extensions of Court-ordered deadlines. *See, e.g.*, ECF Nos. 14, 46, 62, 92 (granting time extensions to Dillard); Nos. 79, 82, 107 (granting time extensions to Defendants). Dillard's Motion for Default Judgment (ECF No. 99) should be denied.

    **B.    The Court should deny Dillard's Motion for Temporary Restraining Order and Preliminary Injunction.**

Dillard does not clearly persuade the Court his case has a substantial likelihood of success on the merits such that Court should grant him the extraordinary remedy of a temporary restraining order or preliminary injunction. *See Miss. Power & Light Co.*, 760 F.2d at 621. His motion "urges the Court to enjoin the defendants from holding him in solitary confinement-like (Restrictive Housing) conditions." ECF No. 109 at 2. He claims his confinement is unconstitutional because: it was imposed without due process; it is indefinite (thirty-four months and counting); and he is "repeatedly deprived of basic human needs of sanitation (showers), exercise (recreation) and meals." *Id.*

4

While Dillard cites legal authorities suggesting his confinement is unconstitutional (*see id.* at 2-3), other authorities support a contrary conclusion. *See, e.g.*, *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971) ("[W]e are deeply troubled by the lightless cell, the limited bedding, and the minimal food provided prisoners in solitary confinement in Texas. Nevertheless, we do not find that the imposition of these conditions constitutes cruel and unusual punishment as forbidden by the Eighth Amendment."); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) (suggesting the duration of solitary confinement sufficient to give rise to a liberty interest is eight years); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) ("The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'").

Dillard also does not clearly persuade the Court he faces a substantial threat of irreparable harm. He cites *Elrod v. Burns*, 427 U.S. 347 (1976), for the proposition that "the continuing deprivation of constitutional rights constitutes irreparable harm." ECF No. 109 at 3. It is disputed whether Dillard is suffering such a deprivation, as several Defendants have denied Dillard's allegations. ECF No. 108 at 2-5. Even so, the *Elrod* decision only recognized "irreparable injury" flowing from public employees' "loss of First Amendment freedoms." *Elrod*, 427 U.S. at 373. It did not address preliminary injunctive relief in the context of a prisoner challenging his confinement's constitutionality. *See id.* "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). Accordingly,

Dillard has not carried his burden on the second, third, and fourth elements required for the Court to grant temporary injunctive relief.

The Court should resolve Dillard's claims in the ordinary course of proceedings with the benefit of briefing and fact finding where appropriate. Dillard's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 109) should be denied.

### C. The Court should deny the motion to dismiss filed by Defendants Lumpkin, Smith, Holmes, Reitsma, Washington, and Lozada.

The Court may consider Defendants' Motion to Dismiss Pursuant to FRCP 12(c) (ECF No. 112) because the pleadings are closed. Dillard filed his Verified First Amended Complaint with Jury Demand ("Complaint") on April 8, 2021 (ECF No. 86), and Defendants filed their answer on August 17, 2021. ECF No. 108. Defendants filed the instant motion after this on August 27, satisfying Rule 12(c)'s requirement that the pleadings be closed. ECF No. 112; *see Nortel Networks Ltd.*, 2002 WL 31114077, at *1 n.1 (discussing Rule 12(c)).

The motion raises three grounds for dismissal: (1) the Court lacks subject-matter jurisdiction over claims for money damages against Defendants sued in their official capacities; (2) Dillard fails to state a § 1983 claim because he does not allege Defendants were personally involved in any constitutional violation; and (3) Dillard fails to state a retaliation claim. ECF No. 112 at 2-11.

#### 1. The Court has subject-matter jurisdiction because Dillard does not seek money damages from Defendants sued in their official capacities.

Even though the motion's title invokes Federal Rule of Civil Procedure 12(c), the first ground for dismissal springs from Rule 12(b)(1) (*id.* at 2-3), which authorizes dismissal where the Court lacks subject-matter jurisdiction. Defendants contend, "To the extent that Plaintiff pleads a claim against Defendants in their official capacities for monetary relief, those claims are barred by the Eleventh Amendment" for want of subject-matter jurisdiction. *Id.* at 2. Legal argument aside,

Defendants do not show where Dillard's pleadings request such improper monetary relief. *Id.* at 2-3. Where Dillard asserts claims against Defendants Lumpkin, Smith, Holmes, and Lozada in their official capacities, he seeks only "declaratory and injunctive relief." ECF No. 86 at 3-4. He sues Defendants Reitsma and Washington in their "individual capacit[ies]" only. *Id.* at 5. Dillard restates this in responding to the motion. ECF No. 153 at 1. Because Dillard does not seek monetary relief from Defendants in their official capacities, there is no justification for dismissal for lack of subject-matter jurisdiction.

### 2. Dillard alleges plausible § 1983 claims against Defendants.

Title 42 U.S.C. § 1983 creates a remedy against one who, while acting under color of state law, violates someone's constitutional rights. Personal involvement is generally an "essential element of a civil rights cause of action" brought under § 1983. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Defendants contend Dillard's pleadings do not allege their personal involvement in any misconduct, but instead attempt to hold them liable as supervisory officials using a theory of *respondeat superior*. ECF No. 112 at 5-6.

"[S]ection 1983 does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). But "[s]upervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)) ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the

policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'").

Dillard's Complaint—liberally construed, accepted as true, and viewed in the light most favorable to him as the Court must at this stage—alleges Defendants Smith, Holmes, and Lozada implemented an unconstitutional "Restrictive Housing" policy and acted with deliberate indifference to Dillard's confinement conditions under that policy. *See Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002) (defining what qualifies as an "official policy"). It alleges Defendants "Smith, Holmes and Lozada . . . promulgat[ed] and enforce[ed]" the Restrictive Housing policy. ECF No. 86 at 16 ¶ 97; *see also id.* at 19 ¶ 116. Restrictive Housing "is a form of solitary confinement" (*id.* at 2 ¶ 2) where "[o]ffenders are locked in a 6 by 9 cell for 22 and ½ to 24 hours a day by themselves." *Id.* at 21 ¶ 129; *see Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996) (holding that administrative segregation can provide grounds for a § 1983 claim if the prisoner shows "extraordinary circumstances"). The cells are "outfitted with a solid steel door" (ECF No. 86 at 21 ¶ 132) and have "no windows to let in fresh air." *Id.* at 22 ¶ 136; *see Helling v. McKinney*, 509 U.S. 25, 31 ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Inmates assigned to Restrictive Housing face "prolonged isolation" (ECF No. 86 at 2 ¶ 1), some for "undefined and indefinite sentences" (*id.* at 18 ¶ 109), with Dillard's confinement now exceeding "over 2 and ½ years." *Id.* ¶ 107; *see Hutto v. Finney*, 437 U.S. 678, 686 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards."). Supervisors possess "unfettered discretion" (ECF No. 86 at 18 ¶ 109) to subject offenders to "repeated deprivations of meals, showers, and exercise." *Id.* at 17 ¶ 101; *see Cooper*

*v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1083 (5th Cir. 1991) ("[Plaintiff's] assertion that he was continuously deprived of food presents a set of facts that may entitle him to relief."). Dillard has consequently "los[t] one hundred and thirty-five (135 lbs) pounds [and] contract[ed] the coronavirus." ECF No. 86 at 18 ¶ 107. These allegations state a facially plausible claim of implementation of an unconstitutional policy against Defendants Smith, Holmes, and Lozada.

The allegations also form a basis from which the Court may infer a plausible claim for deliberate indifference against the same Defendants. *See Ashcroft*, 556 U.S. at 678. The Complaint adds that Defendants Smith, Holmes, and Lozada knew of Dillard's confinement conditions "through Plaintiff's extensive grievance filing, letters to them, oral complaints and civil action." ECF No. 86 at 17 ¶ 105; *see, e.g.*, *id.* at 12 ¶¶ 69-70, 13 ¶ 73; *see Farmer*, 511 U.S. 825, 829 (1994) (Deliberate indifference requires "a showing that the official was subjectively aware of the risk."). Yet "[n]one of the defendant[]s or their agents [have done] anything to intervene." ECF No. 86 at 17 ¶¶ 103; *see also id.* at 17-18 ¶ 106. While Defendants' motion claims Dillard fails to plead personal involvement, their motion does not address the Complaint's allegations quoted and cited above. Nor does it explain how those allegations permit judgment on the pleadings against Defendants Smith, Holmes, and Lozada given legal authorities recognizing claims based on unconstitutional policy implementation and deliberate indifference. These three Defendants are not entitled to dismissal based on the pleadings.

Dillard's pleadings—likewise liberally construed, accepted, and viewed—allege Defendants Reitsma's and Washington's personal involvement. Defendant Reitsma, whom Dillard sues for due process violations, presided over a disciplinary hearing where Dillard challenged his confinement conditions. *See id.* at 10-11. Allegedly, Reitsma only gave Dillard "five minutes to prepare a defense" (*id.* at 11 ¶ 60) and denied Dillard's request for exculpatory video evidence. *Id.*

¶¶ 61-62. The motion claims these allegations "simply do[] not rise to the level of Reitsma having committed a constitutional violation." ECF No. 112 at 6. But the motion cites no authority for this conclusion, leaving the Court unconvinced that the Complaint's allegations against Reitsma warrant a Rule 12(c) judgment. *See id.* As to Defendant Washington, the second ground for dismissal also should be denied because, as discussed below, Dillard states a plausible retaliation claim against him. *See* ECF No. 86 at 14-15. The Complaint also alleges Defendant Washington similarly acted with deliberate indifference to Dillard's confinement conditions. *Id.* at 17 ¶ 101 ("Washington made a conscious decision to allow Plaintiff to be held in [Restrictive Housing] . . . under conditions that consist of . . . deprivations of meals, showers, and exercise."). These two Defendants, likewise, are not entitled to judgment on the pleadings.

Finally, the Court is not convinced Dillard must plead Defendant Lumpkin's personal involvement. Unlike the other five Defendants moving to dismiss, Defendant Lumpkin is sued only in his official capacity. *Id.* at 4 ¶ 9 ("Since the filing of this complaint Bobby Lumpkin has replaced Lorie Davis in her official capacity. Plaintiff respectfully requests the Court substitute Bobby Lumpkin for Lorie Davis for the official capacity claim."); *see also* Fed. R. Civ. P. 25(d) (An officer's successor is "automatically substituted as a party"). The motion does not address whether a plaintiff must plead such a defendant's personal involvement, nor is the Court aware of any authority on point. *See Gonzales v. Paxton*, No. 3:20-cv-1616-L-BH, 2021 WL 5701383, at *3 n.4 (N.D. Tex. Oct. 8, 2021), *rec. adopted*, 2021 WL 5630842 (N.D. Tex. Nov. 30, 2021) ("Because Plaintiff does not allege any personal involvement by [Defendant] and expressly only seeks nonmonetary relief, he appears to sue [Defendant] in his official capacity only."). Even so, the Court could otherwise liberally construe Dillard's Complaint as alleging the same misconduct

for Lumpkin as it does for Smith, Holmes, and Lozada. *See, e.g.*, ECF No. 86 at 2 ¶¶ 1-3. Dismissal on the pleadings thus should be denied as to Defendant Lumpkin.

### 3. Dillard alleges a plausible retaliation claim against Defendant Washington and does not otherwise sue Defendants for retaliation.

Defendants request Plaintiff's retaliation claims against them be dismissed. ECF No. 112 at 6-11. But of the six Defendants who filed this motion, Dillard asserts a retaliation claim only against Washington. *See* ECF Nos. 153 at 8; 86 at 13-16 ¶¶ 74-96, 25-26 ¶¶ 150-154; *Ward v. Fisher*, 616 F. App'x 680, 683-85 (5th Cir. 2015) (analyzing retaliation and deliberate indifference claims separately). Accordingly, the motion's third ground for dismissal as to Defendants Lumpkin, Smith, Holmes, Reitsma, and Lozada should be denied. It also should be denied as to Defendant Washington, against whom Dillard states a plausible retaliation claim.

To state a valid retaliation claim under § 1983, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). His pleadings "must allege more than his personal belief that he is the victim of retaliation." *Id.* at 325. "To prove intent and causation, the prisoner must at least establish a 'chronology of events from which retaliation may be plausibly inferred.'" *Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019) (quoting *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017)). "The retaliatory adverse act must be more than de minimis to state a viable retaliation claim; the act must be 'capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Butts*, 877 F.3d at 588-89 (quoting *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006)).

Liberally construed, Dillard's Complaint satisfies the four *Jones* elements. The Complaint states a constitutional right because it claims Washington violated Dillard's "First Amendment

right to the redress of grievances." ECF No. 86 at 15 ¶ 91; *see Butts*, 877 F.3d at 588 ("Prison officials may not retaliate against prisoners for exercising their constitutional rights[, including] a prisoner's First Amendment right to file grievances, as retaliation has the potential to discourage exercising that right."). Dillard pleads intent and causation because he alleges a chronology of events involving Washington from which retaliation may be inferred. *See Petzold*, 946 F.3d at 252. In October 2019, Dillard met with Washington and complained about his "current conditions of confinement" and informed Washington of Dillard's § 1983 suit against him. ECF No. 86 at 14 ¶ 84. Washington responded, "Get out of my face. I know all about you!" *Id.* A few days later, Washington for no reason allegedly "exclude[ed] Plaintiff from the informal policy of giving offenders two (2) line classes for going a complete year case free." *Id.* at 15 ¶ 91; *see generally Hoskins v. Davis*, No. 2:16-cv-518, 2017 WL 7805251, at *2 n.4, 3 (S.D. Tex. July 13, 2017) (discussing "line class"), *rec. adopted*, 2018 WL 1089339 (S.D. Tex. Feb. 26, 2018).

The Court may infer that a prisoner of ordinary firmness could feel deterred from exercising his First Amendment Right to file grievances if the prisoner knows it could result in the otherwise unprovoked line class exclusion that Dillard alleges. *See Butts*, 877 F.3d at 588-89. The motion claims Washington's "refusal to upgrade Plaintiff's custody status" cannot support a plausible retaliation claim. ECF No. 112 at 10. While it is true that prisoners have no constitutionally protected interest in their custodial classification, *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999), the motion does not explain why Dillard's line class exclusion cannot serve as an evidentiary basis for his retaliation claim. *See* ECF No. 112 at 6-11. Thus, Defendant Washington is not entitled to judgment on the pleadings for Dillard's retaliation claim.

Defendants make a concluding request for the Court to stay all future deadlines until the Court rules on their motion. ECF No. 112 at 11. Having determined the motion should be denied, there is no reason to stay future deadlines, and this request also should be denied.

### D. Defendants McLemore and Smalley's motion to dismiss should be denied.

Defendants Lavonda McLemore and Bridgette Smalley's Motion to Dismiss raises three grounds for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6): (1) the Court lacks subject-matter jurisdiction to entertain claims for money damages against Defendant Smalley in her official capacity; (2) Dillard fails to state a § 1983 claim for personal property deprivation against Defendant McLemore because of the *Parratt/Hudson* doctrine; and (3) Defendant McLemore is entitled to qualified immunity. ECF No. 137. As mentioned, the Court reviews a Rule 12(b)(6) motion as it does a Rule 12(c) motion. *Doe*, 528 F.3d at 418.

#### 1. Defendant Smalley's request for dismissal of claims against her in her official capacity is moot.

Dillard's Amended Complaint asserts claims against Defendant Smalley in her official capacity only. ECF No. 86 at 5 ¶ 15. Dillard has since moved for leave to amend his complaint so that he may sue Defendant Smalley in her individual capacity only (ECF No. 149), and the Court granted that motion. ECF No. 157. The first ground for dismissal is therefore moot.

#### 2. *Parratt/Hudson* does not apply.

Dillard claims that Defendant McLemore violated the 14th Amendment by depriving him of his personal property without due process. ECF No. 86 at 6 ¶ 22. The property at issue is Dillard's "personal hotpot, night lamp, radio and headphones." *Id.* ¶ 21. Defendant McLemore invokes the *Parratt/Hudson* doctrine in contending Plaintiff fails to state a cognizable due process claim against her. ECF No. 137 at 4-5; *see generally Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981).

13

"The *Parratt*/*Hudson* doctrine counsels that 'a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy.'" *Coomer v. Roth*, No. 21-10182, 2021 WL 4714607, at *2 (5th Cir. Oct. 8, 2021) (quoting *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004)). According to McLemore, Dillard's due process claim fails because the State of Texas provides adequate post-deprivation remedies for the property of which Dillard claims he was deprived. ECF No. 137 at 4-5. Even so, "[c]onduct is not 'random and unauthorized' for purposes of the *Parratt/Hudson* doctrine if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'" *Allen*, 388 F.3d at 149 (bracket in original) (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990)). Thus, the doctrine does not apply where the property was "confiscated under the authority of a prison administrative directive." *Id.*

The Complaint alleges "Lavonda McLemore was authorized by TDCJ established procedure to confiscate Dillard's personal property." ECF No. 86 at 6 ¶ 24. Specifically, the "personal property was confiscated under authority of TDCJ administrative directive 03.72-offender property." *Id.* ¶ 20. The *Parratt/Hudson* doctrine "does not protect conduct authorized by TDCJ Administrative Directive 3.72." *Martinez v. Menchaca*, No. C-08-197, 2008 WL 4646887, at *4 (S.D. Tex. Oct. 20, 2008) (citing *Allen*, 388 F.3d at 149). Because he alleges Defendant McLemore confiscated his property under TDCJ authority, *Parratt/Hudson* does not operate to preclude Dillard's § 1983 claim. *See Evans v. Baker*, No. 2:10-cv-0226, 2010 WL 5817654, at *3 (N.D. Tex. Oct. 25, 2010) (analyzing TDCJ Administrative Directive 03.72), *rec. adopted as modified*, 2011 WL 610968 (N.D. Tex. Feb. 17, 2011), *aff'd*, 442 F. App'x 108 (5th Cir. 2011). Defendant McLemore is not entitled to dismissal on this basis.

### 3. Defendant McLemore has not affirmatively pleaded qualified immunity as a defense and is not entitled to dismissal on the basis of that defense.

A defendant who asserts qualified immunity "must affirmatively *plead* that defense" in an answer to the plaintiff's complaint, not in a motion. *Pena v. Dall. Cnty. Hosp. Dist.*, No. 3:12-cv-439-N, 2013 WL 11299229, at *4 (N.D. Tex. June 26, 2013); *see also Barela v. Underwood*, No. 3:18-cv-2353-G-BH, 2019 WL 4648262, at *6 (N.D. Tex. July 30, 2019), *rec. adopted*, 2019 WL 4643587 (N.D. Tex. Sept. 23, 2019) ("Because Defendants raise their qualified immunity defense in a motion to dismiss, their motion on this basis should be denied without prejudice."). Defendant McLemore moves for dismissal based on qualified immunity, but she has yet to affirmatively plead this defense in an answer to Dillard's Complaint. *See* ECF No. 137. Consequently, the Court may not consider this third ground for dismissal, which should be denied "without prejudice to refiling at the proper time." *Pena*, 2013 WL 11299229, at *5.

The undersigned recognizes "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). This Court also recognizes that Rule 12(b)(6) is generally not the procedural mechanism for resolving them. *See Johnson v. Anderson*, No. 4:03-cv-1355-Y, 2004 WL 1908212, at *1 n.1 (N.D. Tex. Aug. 25, 2004) ("Thus, after *Schultea*, it appears to this Court that a Rule 12(b)(6) motion to dismiss on the ground of qualified immunity is no longer viable."). *But see Reitz v. City of Abilene*, No. 1:16-cv-0181-BL, 2017 WL 3046881, at *13 (N.D. Tex. May 25, 2017), *rec. adopted*, 2017 WL 3034317 (N.D. Tex. July 17, 2017). Instead, if Defendants McLemore and Smalley wish to assert qualified immunity as a defense, they should file concurrently an answer affirmatively pleading the defense and a motion for summary judgment on their entitlement to the defense. *See McCoy v. Harmon*, No. 3:16-cv-3497-M-BN, 2017 WL 4792239, at *3 (N.D. Tex. Sept. 15, 2017), *rec. adopted*, 2017 WL 4778705 (N.D. Tex. Oct. 23, 2017).

### E. The Court should deny the Motion to Intervene filed by Tracy Warren.

Finally at issue is a Motion to Intervene and its supplement filed by TDCJ inmate Tracy Warren, who seeks an "intervention as of right . . . pursuant to Fed. R. Civ. P. 24(a)." ECF No. 143 at 1. Warren claims he is similarly situated to Dillard. *Id.* at 2. He invokes Rule 24(a)(1), which provides, "On timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." *See id.* Warren points to 42 U.S.C. § 1997a as the federal statute entitling him to intervention. *Id.* But § 1997a does not give prisoners a right to intervene. It gives the "Attorney General" authority to "institute a civil action" against a State that subjects "persons residing in or confined to an institution . . . to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C. § 1997a(a). Because Warren has not identified a proper federal statute under Rule 24(a)(1), the Court should deny his Motion to Intervene (ECF No. 143) and his Motion to Supplement Motion to Intervene (ECF No. 155), which also does not identify a proper statute.

## IV. CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that Chief Judge Lynn **DENY** all motions (ECF Nos. 99, 109, 112, 137, 143, 155) before the Court. The undersigned further **RECOMMENDS** that, if Defendants McLemore and Smalley intend to assert qualified immunity as a defense, then they be given seven days to file concurrently an answer affirmatively pleading the defense and a motion for summary judgment on their entitlement to the defense.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served

with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on January 6, 2022.

                                                           Hal R. Ray, Jr.
                                                           UNITED STATES MAGISTRATE JUDGE